# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 15-1338V
### Filed: October 13, 2016

| | |
|---|---|
| * * * * * * * * * * * * * * * | UNPUBLISHED |
| JEFF WEGGEN *and* BETH QUALLS | * |
| *on behalf of their minor child* S.W., | * |
| | Special Master Gowen |
| Petitioners, | * |
| | * |
| v. | Final Attorneys' Fees and Costs; |
| | Reasonable Basis. |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| * * * * * * * * * * * * * * * | |

Andrew D. Downing, Van Cott & Talamante, Phoenix, AZ, for petitioners.
Ann D. Martin, United States Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On November 6, 2015, Jeff Weggen and Beth Qualls ("petitioners") filed a petition on behalf of their minor child, S.W., pursuant to the National Vaccine Injury Compensation Program.[2] 42 U.S.C. §§ 300aa-1 to 34 (2012). Petitioners alleged that as a result of receiving Gardasil vaccinations, the last in the series administered May 17, 2012, S.W. suffered a "severe adverse reaction." Petition at Preamble. On petitioners' motion, a Decision dismissing the petition for insufficient proof was issued July 18, 2016.

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

On August 22, 2016, petitioners filed a motion for attorneys' fees and costs.  Respondent filed a response on September 7, 2016, asserting the claim lacked a reasonable basis and objecting to any award of fees or costs in this case.  Respondent's ("Resp.") Response at 1. Petitioners filed a reply in support of their motion on September 12, 2016.

For the reasons discussed below, the undersigned finds that petitioners have demonstrated a reasonable basis for the petition, and therefore may receive an award of reasonable attorneys' fees and costs.

## I.     Procedural History

Petitioners filed their petition on November 6, 2015, alleging that S.W. suffered a "severe adverse reaction" as the result of receiving Gardasil vaccinations, the last in the series administered on May 17, 2012.  Petition at Preamble.  The petition alleged onset in "mid-November 2012," and noted that "[p]etitioners only recently contacted Counsel" and the petition was filed "to ensure that the statute of limitations period does not lapse."  Id. at 1 n.1.  The petition did not specify S.W.'s alleged injury or indicate what initial symptoms S.W. allegedly experienced in mid-November, and no medical records were filed with the petition.

Petitioners were ordered to file medical records by December 4, 2015, and after two extensions of time, petitioners filed medical records and a Statement of Completion on March 3, 2016.  An initial status conference was held on April 5, 2016.  During the status conference, petitioners' counsel stated that "[w]hen they first contacted counsel, petitioners reported that S.W.'s first symptoms manifested in mid-November 2012, and the petition was filed on November 6, 2015" to preserve the statute of limitations.  Order, dated Apr. 8, 2016.  In addition, "[c]ounsel stated that prior to filing the petition, he consulted an infectious disease expert, who provided him with literature supporting a theory that immune suppression caused by vaccination could have allowed S.W.'s pre-existing histoplasmosis to become symptomatic."  Id.  "Counsel acknowledged, however, that there is a significant time period between S.W.'s May 2012, vaccination and the apparent onset of her symptoms."  Id.  During the initial status conference, respondent's counsel "stated that she [was] not currently in a position to waive an objection to reasonable basis, and that the risk [was] on petitioners should they choose to continue pursuing their claim."  Id.  Respondent's counsel noted that one of the medical records says that S.W.'s symptoms are "not likely related" to her Gardasil immunization and noted that it is also not clear the statute of limitations has been met, as there is some suggestion in the medical records that S.W. may have had symptoms as early as August 2012.  Petitioners' ("Pet.") Ex. 3 at 21.

Petitioners were advised that in order to proceed, they would need to file an Amended Petition setting forth the alleged injury and alleged facts with greater specificity, would need to address the statute of limitations issue, and would need to show an appropriate temporal relationship between the vaccination in May 2012 and the onset of S.W.'s symptoms.  Order, dated Apr. 8, 2016.  Petitioners were ordered to file a status report by May 5, 2016, informing the court whether they wished to proceed with their claim and, if so, to file an amended petition and expert report thereafter.  Id.  Petitioners were granted two extensions of time to file their status report, and then missed the June 20, 2016, deadline for doing so.  The undersigned issued a show cause order "to compel petitioners to file a status report informing the court of whether they wish to proceed with their claim, and if so, to file an Amended Petition and expert report."

Show Cause Order, dated July 13, 2016.  On July 15, 2016, petitioners filed a motion for a decision dismissing the petition, and the undersigned issued a Decision dismissing the petition for insufficient proof on June 18, 2016.

Petitioners filed a motion for attorneys' fees and costs on August 22, 2016, requesting $11,410.50 in attorneys' fees and $1,545.13 in costs, for a total fees and costs request of $12,955.63.  Pet. Motion ("Mot.") at 20.  Respondent filed a response to petitioners' application on September 7, 2016, asserting that petitioners' claim lacked a reasonable basis and objecting to an award of any fees or costs.  Petitioners filed a reply in support of their application on September 12, 2016, and filed a supplemental motion for attorneys' fees and costs on September 22, 2016, requesting an additional $2,485.80 in attorneys' fees, for a new total request of $15,441.43 in attorneys' fees and costs.  Petitioners' motion for attorneys' fees and costs is now ripe for a decision.

## II.    Good Faith and Reasonable Basis

### a.   Legal Standard

Section 15(e) of the Vaccine Act governs attorneys' fees.  42 U.S.C. § 300aa-15(e). When awarding compensation on a petition, the special master "shall also award" reasonable attorney's fees and costs.  Id. at §15(e)(1)(A)-(B).  Even when compensation is not awarded, the special master "may award" reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  Id. at § 15(e)(1).

"Good faith" is a subjective standard and petitioners are entitled to a presumption of good faith.  Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007); Grice v. Sec'y of Health & Human Servs., 36 Fed. Cl. 114, 121 (1996).  Respondent does not challenge the presumption of good faith in this case, and the undersigned finds that this case was brought in good faith.  Therefore, the question at issue is whether petitioners had reasonable basis to pursue their claim.

The Vaccine Act does not define "reasonable basis," and neither the Federal Circuit nor the Court of Federal Claims has defined "reasonable basis" for purposes of fee awards under the Vaccine Act.  Chuisano v. United States, 116 Fed. Cl. 276, 285 (Fed. Cl. 2014).  The Court of Federal Claims has held that the statutory language of 42 U.S.C. § 300aa-15(e)(1)(B) grants the special master "maximum discretion in applying the standard."  Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 402 (Fed. Cl. 2012).

Many special masters and Court of Federal Claims judges have determined that the reasonable basis requirement is an "objective consideration determined by the totality of the circumstances."  McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 303 (Fed. Cl. 2011); Chuisano, 116 Fed. Cl. at 286.  In determining reasonable basis, the court looks "not at the likelihood of success, but more to the feasibility of the claim."  Di Roma v. Sec'y of Health & Human Servs., No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Factors to be considered include factual basis, medical support, and the circumstances under

which a petition is filed.  Turner, 2007 WL 4410030, at *6-9.  A reasonable basis can exist even if medical records are not filed simultaneously with the petition.  McKellar, 101 Fed. Cl. at 303. An attorney's pre-filing investigation into the feasibility of the claim is also a relevant factor in analyzing whether a petition had a reasonable basis.  Cortez v. Sec'y of Health & Human Servs., No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014).

The burden is on petitioner to affirmatively demonstrate a reasonable basis, though "petitioner need not establish entitlement to compensation, or even that a claim is likely to succeed."  McKellar v. Sec'y of Health & Human Servs., No. 09-841V, 2012 WL 362030, at *6-7 (Fed. Cl. Spec. Mstr. Jan 13, 2012), reversed on other grounds, 2012 WL 1884703 (Fed. Cl. 2012).  Petitioner must furnish "some evidence" supporting the claims in the petition, but the evidentiary showing required is less than a preponderance of the evidence.  Chuisano v. Sec'y of Health & Human Servs., No. 07-452V, 2013 WL 6234660, at *1, 13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013).

### b.  Reasonable Basis—Effect of Impending Statute of Limitations Deadline

Petitioners argue that an impending statute of limitations deadline is a relevant factor to be considered when determining reasonable basis.  Pet. Mot. at 3.  Numerous other special masters and the Court of Federal Claims have held that the statute of limitations is a relevant factor.  See, e.g. Chuisano v. United States, 116 Fed. Cl. 276, 287 (2014) ("the statute of limitations is a factor that may affect the reasonable basis analysis in appropriate circumstances."); Austin v. Sec'y of Health & Human Servs., No. 10-362V, 2013 WL 659574,at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("special masters have recognized that the ability to investigate adequately a claim is constrained by the need to file quickly to preserve the claim, and have found the balance between these competing interests favors filing."); McNett v. Sec'y of Health & Human Servs., No. 99-684V, 2011 WL 760314, at *8 (Fed. Cl. Spec. Mstr. Feb. 4, 2011) ("the statute of limitations is a factor to consider in determining whether a case was filed with a reasonable basis."); Lamar v. Sec'y of Health & Human Servs., No. 99-583V, 2008 WL 3845165, at *4 (Fed. Cl. Spec. Mstr. July 30, 2008) ("Applying a lenient standard [for reasonable basis] is appropriate when the impending expiration of the statute of limitations prevents an adequate investigation of the basis for the claim"); Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152, at *5 (Fed. Cl. Spec. Mstr. Jan. 9, 2008) ("When faced with a near certainty that the statute of limitations will bar the action if the action is not filed quickly, petitioners' attorneys must file the action and investigate the case more thoroughly after the case is filed.  Thus, petitioners' attorneys are entitled to the benefit of a doubt when they file a petition just before the statute of limitations expires."); Turner v. Sec'y of Health & Human Servs., No. 99-544V, 2007 WL 4410030, at *6 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("A filing on the eve of the running of the statute of limitations may be supported by less information than would be expected if counsel has more time to conduct a pre-filing investigation of the factual underpinnings and the medical basis for a vaccine claim."); Hearell v. Sec'y of Health & Human Servs., No. 90-1420V, 1993 WL 129645, at *1 (Fed. Cl. Spec. Mstr. Apr. 6, 1993) ("Because of the time constraints, it was reasonable for the petitioner to file an incomplete petition in this case.").

Respondent, on the other hand, acknowledges that the above decisions exist, but asserts that they are in error.  Resp. Response at 5.  In support, respondent cites Sebelius v. Cloer, 133 S.Ct. 1886 (May 20, 2013), in which the Supreme Court held that an untimely filed petition could garner an award of attorney's fees if it was filed in good faith and with a reasonable basis. Cloer, 133 S.Ct. at 1890, 1896-97.  In Cloer, respondent contended that permitting recovery of attorneys' fees for untimely petitions would force special masters to carry out costly and wasteful "shadow trials" to determine whether the late petitioners were brought in good faith and with a reasonable basis.  Cloer, 133 S.Ct. at 1896.  Rejecting respondent's argument, the Court observed that "Special masters consistently make fee determinations on the basis of the extensive documentation required by § 300aa-11(c) and included with the petition." Cloer, 133 S.Ct. at 1896).  Respondent contends that the Court's statement indicates that a petition filed without supporting documentation due to an impending statute of limitations deadline "provides no support for determining the reasonable basis of the claim for which the petition was brought." Resp. Response at 5-6.  However, read in context, the Court's statement emphasized the fact that special masters already make fee determinations on the basis of *extensive documentation*, rendering respondent's concern about the burden of "shadow trials" unwarranted.  It did not emphasize that such documentation must necessarily be filed with the petition.

Respondent argues that when a petitioner files a "deficient" petition, unsupported by medical records or medical opinion, petitioners run the risk of later not being able to establish a reasonable basis for receiving attorneys' fees and costs.  Resp. Response at 6 (citing Everett v. Sec'y of Health & Human Servs., No. 91-1115V, 1992 WL 35863, at *2 (Fed. Cl. Spec. Mstr. Feb. 7, 1992).  However, in McNett, Special Master Moran noted that Everett's statement of law that "to have a 'reasonable basis,' a claim must, at a minimum, be supported by medical records or a medical opinion" has not been reviewed by an appellate authority and has been tempered in other decisions by special masters.  McNett, 2011 WL 760314, at *7.  Of particular note, "[t]he special master who decided Everett did not follow Everett in a case in which the attorney's initial work was performed approximately one month before the expiration of the time for filing a case within the statute of limitations," and found the claim had a reasonable basis.  Id. (referring to Hearell, 1993 WL 129645).

As stated in other cases, "[t]he Court generally accepts skeletal petitioners (those filed *sans* records)."  Brown ex rel. Brown v. Sec'y of Health & Human Servs., No. 99-539V, 2005 WL 1026713, at *2 (Fed. Cl. Spec. Mstr. Apr. 26, 2005).  "[W]hile such a filing is adequate to stop the running of the statute of limitations, it does not by itself establish a 'reasonable basis' within the meaning of the statute." Id.  As noted above, however, many special masters have held that an impending statute of limitations deadline is a factor to be considered in the reasonable basis analysis, considering the totality of the circumstances.  In a recent case, the Court of Federal Claims "accept[ed] that 'a petitioner nearing the expiration of the statute of limitations may have a reasonable basis for filing the petition without conducting the same searching inquiry that may be required in another instance.'"  Simmons v. Sec'y of Health & Human Servs., No. 13-825, at *11 (Fed. Cl. Oct. 12, 2016) (internal citations omitted) available at http://www.uscfc.uscourts.gov/aggregator/sources/8.  A reasonable basis may be established by filing records and consulting experts subsequent to filing the petition.  See id., at *10 ("had counsel at any time before the case was dismissed produced evidence to show that petitioner had an injury he alleged was linked to the flu vaccine, recovery of attorneys' fees and costs might

have been supported."(citing <u>Chusiano</u>, 116 Fed. Cl. at 287) ("the reasonable basis inquiry is broad enough to encompass any material submitted in support of the claim at any time in the proceeding, whether with the petition or later.")).

Finally, respondent argues that there is no textual basis in the Vaccine Act for allowing the statute of limitations to impact reasonable basis.  Resp. Response at 6.  Respondent notes that in <u>Cloer</u>, the Court stated that "[t]here is no cross-reference to the Act's limitations provision in its fees provision . . . .  When these two linked sections are read in tandem they simply indicate that petitions filed with the clerk of the court are eligible for attorney's fees so long as they comply with the other requirements of the Act's fees provision."  <u>Id.</u> at 6 (citing <u>Cloer</u>, 133 S.Ct. at 1893).  However, that the impending statute of limitations has been found to be a factor relevant to reasonable basis does not rest on a claim that the statutory language governing fees references the statutory provision governing the statute of limitations.  Rather, this holding was based on the determination that "'reasonable' is a broad term, suggesting that Congress intended special masters to consider a wide spectrum of factors and that a lenient standard for reasonable basis will promote the public policy of having attorneys represent petitioners in the Vaccine Program."  <u>McNett</u>, 2011 WL 760314, at *8.

For the reasons discussed above, the undersigned finds that the statute of limitations deadline is a relevant factor to consider when assessing reasonable basis for the filing of this petition.

### c.  Reasonable Basis—Petitioners' Claim

Based on the totality of the circumstances, and considering the factual basis, medical support, circumstances under which the petition was filed, and the conduct of petitioner's attorney, the undersigned finds that petitioners' claim had a reasonable basis when filed.

This claim was filed very quickly due to the impending statute of limitations deadline. Petitioners had an initial client call with Mr. Downing on November 6, 2015.  Pet. Mot. at 4.  At that time, S.W.'s father represented that the onset of S.W.'s symptoms was mid-November 2012, thus counsel believed there was an impending statute of limitations deadline and the petition was filed that same day.  <u>Id.</u>  As respondent notes, the petition alleged that the date of S.W.'s third HPV vaccination was May 17, 2012, and that symptom onset was mid-November 2012, but did not allege what the first symptoms were or name the condition at issue.  Resp. Response at 1-2; <u>See</u> Petition.  However, the petition specifically noted that "[p]etitioners only recently contacted Counsel" and the petition was filed "to ensure that the statute of limitations period does not lapse."  Petition at 1 n.1.  As discussed above, the fact that the petition was filed in the face of an impending statute of limitations deadline on the same day that petitioners first contacted counsel mitigates in favor of finding reasonable basis.

After filing the petition, counsel obtained supporting documentation for the petition in the form of medical records and a preliminary expert review.  First, counsel worked diligently to obtain, review, and file S.W.'s medical records.  It appears that petitioners' counsel began requesting medical records on November 17, 2015, the same day that medical authorization and a list of medical providers was received from S.W.'s father.  <u>See</u> Pet. Mot. at 28.  Petitioners

filed S.W.'s medical records and a Statement of Completion by March 3, 2016.[3]  See generally, Pet. Mot., Ex. A.  Petitioners acknowledge that medical records received from the University of Iowa stated that S.W.'s issues with weight loss and anorexia began around August, 2012, earlier than S.W.'s father reported during the initial client call.  Pet. Mot. at 4-5 (internal citations omitted).  However, the indication of weight loss and anorexia in August 2012 does not negate the reasonable basis for petitioners' claim, as these symptoms were not clearly related to S.W.'s ultimate histoplasmosis diagnosis.  This was addressed during the status conference on April 5, 2016, and the order following that status conference stated:

> Petitioners must address the statute of limitations issue.  This will require defining what the symptoms of histoplasmosis are, and when they began in S.W. . . . .  The undersigned noted that the medical records indicate that S.W. experienced various symptoms, such as anxiety, nausea, vomiting, weight loss, joint pain and back pain in the fall of 2012, potentially as early as August 2012.

Order, dated Apr. 5, 2016.  Following the status conference, counsel requested S.W.'s counseling records, as he believed "the phobia of eating and vomiting, rather than histoplasmosis, could explain S.W.'s weight loss in the Fall of 2012," and he was hoping the counseling records would reference these phobias prior to S.W.'s receipt of the final Gardasil vaccination.  Pet. Mot. at 5.  It was reasonable for Mr. Downing to attempt to obtain records that would differentiate S.W.'s August 2012 symptoms from her histoplasmosis symptoms.  Ultimately, however, the counseling records did not support this theory.  The billing records indicates that Mr. Downing reviewed the counseling records on June 27, 2016, discussed his recommendations with petitioners between June 30, 2016, and July 14, 2016, and filed petitioners' motion to dismiss on July 15, 2016.  Id. at 5-6, 24-25.  Thus, counsel worked to obtain and review the medical records, define S.W.'s symptoms and injury, and when it became apparent that the medical records would not support petitioners' claim, promptly filed a motion to dismiss petitioners' claim.

In addition, counsel consulted with an infectious disease expert, Dr. Patrick Nemecheck, who provided him with "a possible theory that immune suppression caused by vaccination could have been responsible" for allowing S.W.'s pre-existing histoplasmosis to become symptomatic.  Pet. Mot. at 4; Order, dated Apr. 8, 2016.  On January 12, 2016, after receiving a majority of S.W.'s medical records, counsel contacted Dr. Nemecheck, who indicated that a case "could possibly be made," that Gardasil compromised S.W.'s immune functioning and unmasked an underlying histoplasmosis.  He provided counsel with medical literature to support that theory.  See Pet. Mot. Ex. G.  Respondent asserts that at most, the exchange with Dr. Nemecheck indicates that petitioners' claim was "not frivolous, but is not enough to establish reasonable basis."  Resp. Response at 7.  However, the undersigned finds that the exchange with Dr. Nemecheck provided counsel reason to think a vaccine claim was feasible, and could potentially be made out, thus supporting a finding of reasonable basis under the totality of the circumstances.

---

[3] Petitioner filed the following: Petitioner's immunization record (Pet. Ex. 1); records from Indiana University (Pet. Ex. 2); over 500 pages of records from UnityPoint Health (Pet. Ex. 3); over 450 pages of records from the University of Iowa Hospital & Clinics (Pet. Ex. 4), and; over 350 pages of records from the Mayo Clinic (Pet. Ex. 5).

Respondent contends that the language of Dr. Nemecheck's email "notes skepticism, suggesting that onset would have to be moved closer in time than six months after vaccination for the claim to be viable, and that such an opinion would not necessarily find support in the medical literature." Id. And, respondent states, given that an earlier date of onset would make the case untimely, petitioners never had a viable claim. Id. at 8. The undersigned does not find it possible to draw conclusions regarding Dr. Nemecheck's opinion on the appropriate time frame for onset from the brief email exchange submitted.[4] As noted at the initial status conference, S.W. was not diagnosed with histoplasmosis until March 2013. See Order, dated Apr. 8, 2016, at 2. Counsel's email to Dr. Nemecheck notes that several tests were run in November/December, but nothing was identified other than an elevated sed rate. Pet. Mot., Ex. G. Dr. Nemecheck responded that there could be a connection between S.W.'s vaccination and histoplasmosis if he could "identify subtle changes in her records that others glossed over." Id. It is not possible from this exchange, to conclude, as respondent does, that Dr. Nemecheck was of the opinion that that "onset would have to be moved closer in time than six months after vaccination for the claim to be viable." Rather, it is just as likely that Dr. Nemecheck was referring to identifying changes in S.W. during November/December 2012 that would suggest immune suppression. The statement by Dr. Nemecheck suggested that a careful review of the medical records could be helpful in establishing causation.

Finally, the facts as alleged in the petition do not, in and of themselves, indicate that petitioners' claim was not feasible. Respondent notes that because the petition was filed on November 6, 2015, the onset of S.W.'s symptoms would have to have been on or after November 6, 2012, to meet the Vaccine Act's three year statute of limitations period. Resp. Response at 4. November 6, 2012, was six months after petitioner's May 17, 2012, vaccination,

---

[4] Mr. Downing wrote:

> [b]y November/December 2012, they began to notice changes in the child—very pale, loss of appetite, weight loss, nausea and vomiting, back and joint pain. Several tests were run, but nothing identified other than an elevated sed rate. Eventually, the child tested positive for histoplasmosis, and she subsequently developed post histoplasmosis fibrosing mediastinitis. I am aware that an underlying histoplasmosis can be aggravated or activated by a TNF-a antagonist. Can some argument like that can [sic] be made here? That Gardasil compromised the child's immune functioning and unmasked the child's underlying histoplasmosis?

Pet. Mot. Ex. G. Dr. Nemechek responded:

> Yes. There is some discussion in the literature about immunosuppression occurring from vaccination. Articles are attached . . . . Kids with normal immune systems don't get mediastinal Histoplasmosis. A case could possibly be made. However, not much literature/science to go one [sic]. If I could identify subtle clinical changes in her records that others glossed over normal or unrelated, could be a connection.

Id.

timing which respondent asserts "strains any reasonable basis analysis too far to be persuasive." Resp. Response at 4. Petitioners counter that it is not necessarily self-evident that a six month gap is inappropriate timing because "some autoimmune processes take months, if not years, to manifest" and that a determination as to appropriate timing cannot be made in the absence of an expert opinion in this case. Pet. Mot. at 2-3. The undersigned agrees with petitioners. While many autoimmune conditions commonly seen in the Program would be expected to manifest in less than six months after vaccination, exacerbation of underlying histoplasmosis is an unusual allegation, and determination of the appropriate timing would require an expert opinion.

Accordingly, petitioners' counsel filed this claim in the face of an impending statute of limitations deadline and subsequently obtained medical records and consulted with a potential expert. When it became apparent that petitioners would not be able to prevail, counsel moved promptly for a decision dismissing the petition. While this case comes close to the border of reasonable basis, counsel's diligent efforts to obtain medical records and an expert opinion, for which there seemed to be a possibility, is enough to satisfy the reasonable basis requirement. Accordingly, for the reasons set forth above, the undersigned finds that petitioners' claim had a reasonable basis, and petitioners are entitled to an award of reasonable attorneys' fees and costs.

## III.   Reasonable Attorneys' Fees and Costs

### a.   Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Just as "[t]rial court courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton, 3 F.3d at 1521 (citing Farrar v.

Sec'y of Health & Human Servs., 1992 WL 336502 at * 2-3 (Cl. Ct. Spec. Mstr. Nov. 2, 1992)).

### i.    Hourly Rates and Hours Expended

Petitioners request the following hourly rates: $350 per hour for Andrew D. Downing $195 per hour for Courtney Van Cott, $100 per hour for Robert W. Cain, and $100 per hour for Danielle P. Avery.  Pet. App., Ex. A, at 14.  These rates are consistent with rates previously found reasonable for Mr. Downing and his associates.  See, e.g. Uscher v. Sec'y of Health & Human Servs., No. 15-798V, 2016 WL 3670518 (Fed. Cl. Spec. Mstr. June 15, 2016); Allicock v. Sec'y of Health & Human Servs., No. 15-485V, 2016 WL 3571906 (Fed. Cl. Spec. Mstr. May 26, 2016); Al-Uffi v. Sec'y of Health & Human Servs., No. 13-956V, 2015 WL 6181669 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).  The undersigned also notes that the requested rates are consistent with the rates billed by Mr. Downing and his associates in several cases where fees were awarded pursuant to joint stipulations by the parties.  The undersigned finds the requested rates reasonable.  In addition, on review of the billing record, the undersigned finds the hours expended reasonable.  Mr. Downing was confronted with a family holding a genuine belief that the vaccine caused an unusually severe manifestation of a rare disease, and he worked to obtain necessary medical records and an expert opinion.  Upon concluding that a persuasive link could not be established, he convinced his clients to drop the case and moved for a dismissal decision. The time spent under these circumstances was reasonable.  The undersigned also finds the hours expended in litigating the fee issue, billed in petitioners' supplemental motion for attorneys' fees and costs, reasonable.  See generally, Pet. Supplemental Mot., Ex. J.

### b.    Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable.  Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992).  Petitioner requests $1545.13 in attorneys' costs.  Pet. Mot., Ex. A at 14.  The submitted costs consist almost entirely of medical record fees, postage, and photocopying expenses, and the undersigned finds them reasonable.  See id. at 12-14.

## IV.    Conclusion

An award should be made as follows:

**(1)   A lump sum of $15,441.43 in the form of a check jointly payable to petitioners and to petitioners' attorney, Andrew D. Downing, of Van Cott & Talamante, for attorneys' fees and costs.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance herewith.[5]

**IT IS SO ORDERED.**

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.

**s/ Thomas L. Gowen**
Thomas L. Gowen
Special Master